# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DAVID SCOTT VIDRINE, ET AL. | CIVIL ACTION |
| VERSUS | |
| SHARON WESTON BROOME, ET AL. | NO. 18-00538-BAJ-EWD |

## RULING AND ORDER

Before the Court is the **Motion for Summary Judgment (Doc. 39)**, filed by the East Baton Rouge Parish Communications District (the "District"). The Motion is opposed. (Doc. 54). Defendant filed a Reply. (Doc. 58). For the reasons provided herein, the District's Motion is **GRANTED**.

## I. BACKGROUND

Plaintiffs are one current and three former employees of the City of Baton Rouge and the Parish of East Baton Rouge, through the Department of Emergency Medical Services ("EMS") and, purportedly, the District. (Doc. 54, p. 1). Plaintiffs allege that they were subjected to "sexist statements and daily harassment by Stacy Simmons, Chief of Communications." (Doc. 54, p. 2). Plaintiffs also assert that they were subjected to a hostile work environment by Simmons and a supervisor, Angie Poche, since early 2014. (*Id.*).

On April 3, 2018, Plaintiffs filed suit against the District; Sharon Weston Broom, mayor-president of Baton Rouge, Louisiana; Chad Guillot, interim EMS Administrator for EMS; and Simmons, in the 19th Judicial District Court in

1

Louisiana, alleging claims of sex discrimination under the Louisiana Employment Discrimination Law ("LEDL"), La. Rev. Stat. Ann. § 23:301, *et seq*, as well as Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e). (Doc. 27, p. 18). Plaintiffs also seek relief for intentional infliction of emotional distress ("IIED"), under La. Civ. Code art. 2315.[1]

The District now moves for summary judgment, asserting that it is not Plaintiffs' employer for the purposes of Title VII or the LEDL. The District also asserts that Plaintiffs' IIED claims against it should be dismissed.

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). A party asserting that a fact cannot be genuinely disputed must support the assertion by citing materials in the record, including "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, [and] interrogatory answers" or that an adverse party cannot produce admissible evidence to support the presence of a genuine dispute. *See* FED. R. CIV. P. 56(c)(1).

---

[1] Plaintiff Zachary Stewart contends that he was "constructively terminated in February 2017 because of unfair treatment and reporting of disability and sex discrimination." (Doc. 27, p. 17). However, the Complaint does not include disability discrimination as a claim for relief. *See* (Doc. 27, at ¶ 61–66). Although the District addresses disability discrimination in their Motion, (Doc. 39, p. 15), Plaintiffs did not address disability discrimination in their opposition. (Doc. 54). Therefore, the Court declines to address these claims.

"[W]hen a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986) (quotation marks and footnote omitted). "This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation marks and citations omitted). In determining whether the movant is entitled to summary judgment, the Court "view[s] facts in the light most favorable to the non-movant and draw[s] all reasonable inferences in her favor." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997) (citation omitted).

## III.  ANALYSIS

### A. Title VII

Title VII bars discrimination by an employer against an employee based on sex or gender. 42 U.S.C. 2000e-2(a). Title VII defines "employer," as "a person engaged in an industry affecting commerce who has fifteen or more employees. . . , and any agent of such a person. . . .," *Muhammad v. Dallas Cnty. Cmty. Supervision & Corrs. Dep't.*, 479 F.3d 377, 380 (5th Cir. 2007) (quoting 42 U.S.C. § 2000e(b)).

The parties agree that EMS and the District are nominally separate entities. There are two theories under which apparently distinct entities may both be considered employers for the purposes of Title VII in employment discrimination cases: the "single employer" or "integrated enterprise" theory, which asks whether two superficially separate entities should be treated as one entity; and the "joint

employer" theory, which assumes that the alleged employers are separate entities and assesses whether the degree of control is nonetheless sufficient to treat both as employers. *See E.E.O.C. v. Valero Refining-Texas L.P.*, No. 3:10-CV-398, 2013 WL 1168620, at *3 (S.D. Tx. Mar. 13, 2013) (citing *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983)).

"A company becomes a joint employer when it, while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer." *Duhon v. S. (Scrap) Recycling*, No. 14-CV-00383-BAJ-EWD, 2016 WL 6832632, at *4 (M.D. La. Nov. 17, 2016) (internal quotations omitted). "The right to control the employee's conduct is the most important component of determining a joint employer." *Perry v. VHS San Antonio Partners, L.L.C.*, No. 20-50356, 2021 WL 912710, at *7 (5th Cir. Mar. 10, 2021) (citation omitted). Factors which indicate that an employer "controlled" an employee include "the right to hire and fire, the right to supervise, and the right to set the employee's work schedule." *Id.* Courts also look to the economic realities of an employer-employee relationship, such as "who paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment" to determine whether an entity is an employer. *Id.* (citations omitted).

Plaintiffs argue that they were "employed" for the purposes of Title VII by both EMS and the District, because the District has "the authority to hire and fire" under

an Intergovernmental Agreement ("Agreement")[2] between it and the City of Baton Rouge. (Doc. 54, p. 4). The Agreement provides that "[u]nless otherwise specifically agreed upon by both parties, all personnel provided by the City-Parish shall be City-Parish employees." (Doc. 54-1, at ¶ 4.2).

The Agreement also specifies that:

> Unless otherwise agreed upon by the parties, all personnel shall follow City-Parish rules and regulations and shall be disciplined by the City-Parish when appropriate. . . . In the event that the District is unsatisfied with an employee provided by the City-Parish or believe that a disciplinary action may be appropriate, the District Director. . . shall communicate these concerns in writing to the Emergency Communications Chief of Operations for 911 call center staff and to the EMS Business Manager for all other staff.

(*Id.* at ¶ 4.4).

While Plaintiffs contend that this provision of the Agreement demonstrates that the District had the authority to hire, fire, and discipline employees, it explicitly provides the opposite. Plaintiffs have put forth no evidence that the District had the authority or the ability to control Plaintiffs' conduct. While it is true that the District had the discretion to express its dissatisfaction with employee performance, (Doc. 54-1, at ¶ 4.4), nowhere in the Agreement does it support Plaintiffs' contention that the District could act on that dissatisfaction outside of communicating concerns to EMS.

Plaintiffs admit, and do not contest, the following: EMS hired and fired Plaintiffs, supervised Plaintiffs, assigned Plaintiffs their work schedules, gave

---

[2] The Agreement outlines the terms by which the City-Parish provides the District with "911 call center staffing, radio shop staffing, Financial and Procurement Services and Building Use/Building Maintenance." (Doc. 54-1, p. 2).

Plaintiffs their daily work assignments, and approved or denied Plaintiffs' requests for leave. (Doc. 39-2, p. 12); (Doc. 55). EMS maintained records of Plaintiffs' work hours, paid Plaintiffs, withheld taxes, and provided employment benefits. (Doc. 39-1, p. 6). Plaintiffs were subject to the employment policies of EMS, not the District. (*Id.*); *See also* (Doc. 54-1, at ¶ 4.2).

Given this, Plaintiffs have failed to provide any evidence that demonstrates that the District maintained sufficient control over Plaintiffs so as to be considered a joint employer with EMS under Title VII. Therefore, Plaintiffs' Title VII claims against the District are denied.

### B. LEDL

The District also alleges that it is not Plaintiffs' employer under the LEDL. While this contention is unopposed, the Court cannot grant summary judgment on this basis; Defendant must point to the absence of a material factual dispute. *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n. 3 (5th Cir. 1995).

Under the LEDL, a political subdivision is an "employer" where it "reciev[es] services from an employee and, in return, giv[es] compensation of any kind to an employee." LA. REV. STAT. ANN. § 23:302(2). "In determining whether an employer provides compensation to an employee, Louisiana courts have considered such factors as: who paid the employee's wages; who withheld federal, state, unemployment, or social security taxes; whether the employee's name appeared on the employer's payroll; and whether the employee participated in the employer's benefit plans." *Dejoie v. Medley*, 2008-2223, p. 5 (La. 5/5/09); 9 So. 3d 826, 829 (citation omitted).

As noted, it is uncontested that EMS, rather than the District, paid Plaintiffs,

withheld taxes from their salaries, and provided employee benefits. (Doc. 39-2, p. 14). Therefore, because it did not give compensation of any kind to Plaintiffs, the District is not the Plaintiffs' employer under the LEDL and Plaintiffs' LEDL claims against the District are dismissed as a matter of law.

### C. Intentional Infliction of Emotional Distress

The District contends that Plaintiffs have not provided any evidence that the District "engaged in extreme and outrageous conduct towards the Plaintiffs or desired to inflict severe emotions distress on the Plaintiffs." (Doc. 39-2, p. 16). Plaintiffs do not oppose this.

Under Louisiana law, to bring a claim for IIED, a plaintiff must establish "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). In a workplace setting, this cause of action is limited "to cases which involve a pattern of deliberate, repeated harassment over a period of time." *Nicholas v. Allstate Ins. Co.*, 1999-2522, p. 14 (La. 8/31/00); 765 So. 2d 1017, 1026 (citing *White*, 585 So.2d at 1205). In finding IIED in the workplace, "the employer's conduct must be intended or calculated to cause severe emotional distress." *Id.* at 1027 (citing *White*, 585 So.2d at 1210).

Plaintiffs have not pointed to any conduct "intended or calculated to cause severe emotional distress" by the District. *Id.* at 1027. The District consists of one employee, Todd Campbell, and the Board of Commissioners. (Doc. 39-2, p. 16).

7

Plaintiffs purportedly were subjected to harassment by Stacy Simmons and Angie Poche, neither of whom are employees of the District.

Because Plaintiffs have failed to provide evidence that the District caused or intended to cause Plaintiffs emotional distress, Plaintiffs IIED claims against the District are dismissed.

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that the District's Motion (Doc. 39) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' claims against Defendant, the East Baton Rouge Parish Communications District, are **DISMISSED WITH PREJUDICE**.

Baton Rouge, Louisiana, this 30th day of March, 2021

_____
**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**