UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **DAVID SCOTT VIDRINE, ET AL.** | CIVIL ACTION |
| VERSUS | |
| **SHARON WESTON BROOM, ET AL.** | NO. 18-00538-BAJ-EWD |

RULING AND ORDER

Before the Court is **Defendants' Motion for Summary Judgment (Doc. 46)**, filed by Sharon Weston Broome through the Department of Emergency Medical Services ("EMS"), Chad Guillot, and Stacy Simmons ("Defendants"). The Motion is opposed. (Doc. 53). Defendants filed a Reply. (Doc. 60). For the reasons to follow, it is ordered that Defendants' Motion is **GRANTED**.

I.   BACKGROUND

Plaintiffs are one current and three former employees of EMS, all of whom identify as men. (Doc. 53, p. 1). Plaintiffs allege the following:

Plaintiffs were subjected to sexist statements and daily harassment by Stacy Simmons, Chief of Communications of EMS. (Doc. 53, p. 2). Since early 2014, Simmons and Angie Poche, a supervisor, created a hostile work environment (Doc. 53, p. 2). In particular, Simmons did not speak to men and made sexist comments. (*Id.*). Plaintiffs were also subjected to different and more severe discipline for minor infractions because of their gender.

Each Plaintiff has raised a claim of sex discrimination under the Louisiana Employment Discrimination Law, La. Rev. Stat. Ann. § 23:301, *et seq*, specifically La.

1

Rev. Stat. Ann. § 23:332, as well as Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e). (Doc. 27, p. 18). Plaintiffs additionally bring a claim for intentional infliction of emotional distress, under Louisiana state law. (*Id.*).

Defendants assert that Plaintiffs' allegations are unsupported by the competent evidence in the record and move for summary judgment. (Doc. 46).

## II.  LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). A party asserting that a fact cannot be genuinely disputed must support the assertion by citing materials in the record, including "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, [and] interrogatory answers" or that an adverse party cannot produce admissible evidence to support the presence of a genuine dispute. *See* FED. R. CIV. P. 56(c)(1).

"[W]hen a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986) (quotation marks and footnote omitted). "This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation marks and citations omitted). In determining whether the movant is entitled to summary judgment, the

Court "view[s] facts in the light most favorable to the non-movant and draw[s] all reasonable inferences in her favor." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997) (citation omitted).

### III. ANALYSIS

#### A. Zachary Stewart

While employed at EMS, Plaintiff Zachary Stewart faced termination for sexual harassment and inappropriate conduct after he allegedly made "a sexually provocative motion" towards one of his coworkers. (Doc. 46-5, p. 37). The incident was allegedly captured on video. (*Id.*). Stewart has not seen the video, but he was represented by counsel throughout the disciplinary process who did view the video. (Doc. 46-5, p. 37–8). Stewart and EMS "worked out a[n] agreement" whereby Stewart's proposed termination was reduced to a thirty-day suspension. (Doc. 46-1, p. 12); (Doc. 46-5, p. 38). In exchange, Stewart signed a Resolution on March 12, 2015, that "waive[d], compromise[d], release[e] and otherwise discharge[d] EMS from any suit, claim or cause of action specifically included by not limited to any claim of wrongful termination or violations of 42 U.S.C. § 1983 or Title VII, of the Civil Rights Act, resulting from, created by, relating to" his employment by EMS. (Doc. 60-1, p. 6).

Considering the Resolution, Defendants assert that all Stewart's Title VII allegations against them should be dismissed. (Doc. 46-1, p. 12). Stewart contends, without support, that the Resolution "is not a valid release of the claims of harassment." (Doc. 53, p. 7).

"A general release of Title VII claims does not ordinarily violate public policy. To the contrary, public policy favors voluntary settlement of employment

3

discrimination claims brought under Title VII." *Rogers v. Gen. Elec. Co.*, 781 F.2d 452, 454 (5th Cir. 1986) (citations omitted). A release of a Title VII claim is valid only if it is "knowing and voluntary." *Id.* An employer must demonstrate that its former employee waived his rights under Title VII knowingly and voluntarily. *Id.* Once this is established, the former employee must demonstrate that the release was "invalid because of fraud, duress, material mistake, or some other defense." *Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 935 (5th Cir. 1994).

It is uncontested that Stewart signed the waiver, which was presented by his attorney. (Doc. 53-9, p. 65). Plaintiffs provide no evidence that Stewart was coerced into signing the Resolution, that he did so without knowledge of its contents, that the Resolution was fraudulent, or that there was some other legally valid reason the Resolution should not be considered. As such, the Court finds that Stewart has waived his Title VII claims against Defendants and will not address any allegations made by him.

### B. Title VII and LEDL Claims

The Court will first address Plaintiffs' claims under Title VII and LEDL.[1] Title VII prohibits discrimination based on sex. 42 U.S.C. § 2000e-2. Harassment on its own, or in conjunction with a hostile work environment claim, is considered an actionable form of discrimination. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57

---

[1] "Because [the LEDL] is similar in scope to the federal prohibition against discrimination, Louisiana courts have looked to federal jurisprudence to interpret Louisiana discrimination laws." *King v. Phelps Dunbar, L.L.P.*, 98-1805, p. 7 (La. 6/4/99); 743 So.3d 181, 187 (citations omitted). Therefore, because the outcome of Plaintiffs' claims will be the same under the federal and state statutes, the Court will analyze these issues only under the applicable federal precedents. *See McCoy v. Shreveport*, 494 F.3d 551, 556 n. 4 (5th Cir. 2007).

(1986); *Alleman v. La. Dept. of Econ. Dev.*, 698 F. Supp. 2d 644, 656 (M.D. La. 2010). Title VII also prohibits retaliation against employees who oppose unlawful practices under Title VII by employers. 42 U.S.C. § 2000e-3(a). Plaintiffs assert that Defendants are liable for sex discrimination under all three theories.

### i. Hostile Work Environment and Harassment

To succeed on a hostile work environment claim, Plaintiffs must demonstrate that they were subjected to harassment that was so "severe or pervasive" that it altered the conditions of their employment and created an abusive working environment. *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 325 (5th Cir. 2019); *See also, Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 752 (1998). Title VII is not a "general civility code," therefore, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). "Title VII was only meant to bar conduct that is so severe and pervasive that it destroys a protected class member's opportunity to succeed in the workplace." W*eller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996), *cert. denied*, 519 U.S. 1055, 117 S.Ct. 682, 136 L.Ed.2d 607 (1997). Factors courts consider in whether a hostile environment exists include the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance. *Faragher*, 524 U.S. at 788–9; *See also West v. City of Houston, Tex.*, 960 F.3d 736, 742 (5th Cir. 2020).

Plaintiffs rely on minor, isolated incidents of workplace conflict[2] in an attempt to demonstrate "daily" harassment. Even taking all of Plaintiffs' allegations as true—although the Court notes that all are contested[3] and many are unsupported by the evidence—such instances cannot support a claim for harassment.

Plaintiffs put forth two allegations of purportedly harassing behavior which span any period of time. First, it is alleged that Simmons would not speak to men at EMS. (Doc. 53, p. 2). However, the evidence indicates that this is not the case. Plaintiffs confirmed that Simmons would speak to them in person about work, email them, or relay instructions through supervisors—some of whom were men. (Doc. 53-10, p. 16–17); (Doc. 53-12, p. 23–26). In addition, Plaintiffs provide no evidence that this purported lack of communication affected a term, condition, or privilege of employment, or in any way hindered their work.

Second, Plaintiffs contend that women were permitted to take long breaks from work "to handle personal business" without using leave, while men were not. (Doc. 53,

---

[2] Specifically, Plaintiffs allege that, on one, unspecified occasion:
   (1) Simmons stated, "there are too many men in communications." (Doc. 46-5, p. 4); (Doc. 53-12, p. 25);
   (2) Larry Whitmore was required to provide a doctor's note when he took a sick day, but a woman who worked at EMS was not required to provide one. (Doc. 46-4, p. 29);
   (3) Whitmore contends that he "observed two female co-workers change settings and never saw either of the female co-employees counseled for the change whereas he was counseled." (Doc. 53, p. 6);
   (4) Whitmore and Vidrine were disciplined for low call volume, while women at EMS were not counseled. (Doc. 60, p. 7);
   (5) Whitmore was disciplined for looking at his personal phone, which was not a policy violation, while women in the office were not disciplined for sleeping on the job, which is a policy violation. (Doc. 53, p. 6); and
   (6) Steven Bozeman was disciplined for engaging in a disagreement with his supervisor, while his co-worker, a woman, who allegedly baited him into a confrontation, was not. (Doc. 53, p. 5).

[3] *See* Doc. 60.

6

p. 2). As evidence, Plaintiffs note that Debbie Dean, a woman, was permitted to drive to her house to get her iPad twice, allegedly without using leave. (*Id.*); (Doc. 53-4, p. 51). Dean notes that she was likely gone for no more than twenty minutes on those occasions. (Doc. 53-4, p. 51). Otherwise, no Plaintiff can remember which specific women were permitted to take longer breaks without using leave, and there is no other evidence to support this contention. *See, e.g.* (Doc. 56, p. 15). In fact, upon reviewing the employment documentation, Defendants found several instances in which women used leave when they took extended breaks, rebutting Plaintiffs' conclusory allegations. (Doc. 53-2, p. 271–72).

In sum, because Plaintiffs' complained of conduct was not severe or pervasive, was relatively infrequent, was not physically threatening, or humiliating, and did not unreasonably interfere with Plaintiffs' work performance, Plaintiffs have not demonstrated that EMS was a hostile environment.

### ii. Disparate Treatment and Retaliation

A plaintiff alleging disparate treatment discrimination must establish that his employer intentionally discriminated against him because of his sex or gender. *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004). To establish a *prima facie* case of discrimination, Plaintiffs must show: (1) that they are a member of a protected class; (2) that they were qualified for their positions; (3) that they suffered an adverse employment action, and; (4) that others similarly situated were treated more favorably. *See Willis v. Coca Cola Enters., Inc.*, 445 F.3d 413, 421 (5th Cir. 2006). "To establish a *prima facie* case of discrimination, the plaintiff must either present direct evidence of discrimination, or, in the absence of direct evidence, rely on

7

circumstantial evidence using the *McDonnell Douglas* burden shifting analysis." *Wittmer v. Phillips 66 Co.*, 915 F.3d 328, 332 (5th Cir. 2019).

For retaliation claims, a plaintiff must establish a *prima facie* case by providing proof "(1) that [he] engaged in protected activity, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action." *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 n.8 (5th Cir. 1998).

When asserting a Title VII disparate treatment claim, only "ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating" are actionable. *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007). Title VII's anti-retaliation provision, however, does not limit adverse employment actions to discriminatory actions that affect the terms and conditions of employment. *Burlington N. & Santa Fe Ry. Co v. White*, 548 U.S. 53, 55 (2006). Nevertheless, to establish a *prima facie* case of retaliation Plaintiffs must still demonstrate that they were subjected to an employment action that "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (citation omitted).

Defendants assert, in part, that because Plaintiffs have not demonstrated that an adverse employment action was taken against them, they cannot establish a *prima facie* case of disparate treatment or retaliation. (Doc. 46-1, p. 3). Plaintiffs' sole argument is that while EMS did not directly subject Plaintiffs to an adverse

8

employment action, the harassment at EMS was so pervasive that it constituted "constructive discharge," for the purposes of Title VII. (Doc. 53, p. 9).

"Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes." *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004). In other words, constructive discharge is an adverse employment action for the purposes of Title VII. *See Green v. Brennan*, 136 S.Ct. 1769, 1779 (2016). A constructive discharge claim "entails something more" than mere harassment. *Suders*, 542 U.S. at 147. To establish constructive discharge, a plaintiff must not only "prove [] that he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign. . . . But he must also show that he actually resigned." *Brennan*, 136 S.Ct. at 1777 (citing *Suders*, 542 U.S. at 148).

As previously discussed, Plaintiffs have failed to offer competent evidence which indicates that they were subjected to any actionable harassment, much less persistent, pervasive harassment that would compel a reasonable person to resign. *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998). As such, Plaintiffs were not constructively discharged. Because there is no constructive discharge, and Plaintiffs do not assert that there was any other adverse employment action taken against them, (Doc. 53, p. 9), Plaintiffs' Title VII disparate treatment claims and retaliation claims fail.

### C. IIED

Defendants also argue that the conduct by Simmons does not rise to the level

9

of deliberate, repeated harassment to constitute a claim for IIED under Louisiana Law. (Doc. 46-1, p. 28). Plaintiffs do not address this argument in their opposition.

Under Louisiana law, to bring a claim for IIED, a plaintiff must establish "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). In a workplace setting, this cause of action is limited "to cases which involve a pattern of deliberate, repeated harassment over a period of time." *Nicholas v. Allstate Inc. Co.*, 1999-2522, p. 14 (La. 8/31/00); 765 So. 2d 1017, 1026 (citing *White*, 585 So.2d at 1205). In finding IIED in the workplace, "the employer's conduct must be intended or calculated to cause severe emotional distress." *Id.* at 1027 (citing *White*, 585 So.2d at 1210).

As is evidenced above, none of the conduct Plaintiffs allege against Simmons can, by applicable standards, be considered harassing, much less "extreme" or "outrageous." Further, Plaintiffs have not provided any evidence that Simmons's actions were intended to cause them emotional distress. As such, Plaintiffs have not presented a genuine issue of material fact as to their IIED claims.

## IV.   CONCLUSION

Because Plaintiffs have failed to present evidence that they suffered an adverse employment action, or that they were the victims of repeated and pervasive harassment, their claims for discrimination under Title VII and LEDL, as well as their Louisiana IIED claim, are dismissed.

Accordingly,

**IT IS ORDERED** that Defendants' Motion (Doc. 46) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' claims against Defendants are **DISMISSED WITH PREJUDICE**.

A separate judgment shall issue.

Baton Rouge, Louisiana, this 31st day of March, 2021

_____
**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**